UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DISABILITY RIGHTS NEW YORK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JEFF WISE, in his official capacity as ) <br> Executive Director of the New York State ) <br> Justice Center for the Protection of People ) <br> with Special Needs; and ROBIN A. ) <br> FORSHAW, in her official capacity as ) <br> General Counsel of the New York State ) <br> Justice Center for the Protection of People ) <br> with Special Needs, ) <br> ) <br> Defendants. ) | **COMPLAINT** <br><br> Case No. 1:15-cv-032 (GLS/CFH) |

## I. INTRODUCTION

1.  Plaintiff Disability Rights New York ("DRNY"), the designated Protection and Advocacy agency in the State of New York, brings this action to enforce its federal law rights to access records pursuant to the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. § 15041–15043, and the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. § 10801 et seq.

2.  Defendants have refused to timely provide DRNY with complete, unredacted records relating to investigations conducted by the New York State Justice Center for the Protection of People with Special Needs (the "Justice Center"), a state agency charged with investigating allegations of abuse and neglect of persons with disabilities.

1

3. Defendants' failure to comply with DRNY's requests for access to records interferes with DRNY's federal mandate to protect people with disabilities in New York State, investigate allegations of abuse and neglect, provide legal advocacy for people with disabilities, determine whether investigations conducted by state agencies charged with investigating allegations of abuse and neglect were fully and independently conducted, determine whether a further investigation by DRNY should be conducted, and determine whether further corrective action should occur.

4. DRNY seeks injunctive and declaratory relief, as well as attorney's fees and costs.

## II. JURISDICTION AND VENUE

5. The court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

6. Venue is properly brought in the Northern District of New York pursuant to 28 U.S.C. § 1391(b)(1)-(2).

## III. PARTIES

### A. Plaintiff

7. DISABILITY ADVOCATES, INC. is an independent non-profit corporation organized under the laws of the State of New York. It does business and has sued under the name DISABILITY RIGHTS NEW YORK.

8. Under both the DD Act and the PAIMI Act, Congress gives significant federal funding to states for services to individuals with disabilities, provided that the state establishes a Protection and Advocacy ("P&A") system that meets certain specified conditions. New York has established such a P&A system.

9. At all times relevant to this action, DRNY has been and is the statewide "P&A" system designated by the Governor of the State of New York to protect and advocate for the legal and civil rights of those citizens of the State of New York who are disabled.

### B. Defendants

10. Defendant Jeff Wise is the Executive Director of the Justice Center, with all power and duties set forth in the New York Executive Law and as otherwise prescribed by law, statutes, rules, and regulations. While under his direction and control, the Justice Center took the actions which plaintiff complains of in this lawsuit. He is sued in his official capacity.

11. Defendant Robin A. Forshaw is General Counsel of the Justice Center. Defendant Forshaw directed the Justice Center to take the actions which plaintiff complains of in this lawsuit.

## IV. FACTS

### A. Relevant Statutes and Regulations

12. Both the DD Act and the PAIMI Act authorize the designated P&A system to have access to records of persons with disabilities under certain circumstances.

13. As the designated P&A system for the State of New York, DRNY's authority to access records includes, but is not limited to:

   a. all records of individuals with developmental disabilities and mental illness who have authorized DRNY to access their records. 42 U.S.C. §§ 15043(a)(2)(I)(i) and 10805(a)(4)(A);

   b. all records of any individual with a developmental disability or mental illness if: (1) the individual cannot authorize access due to his or her mental or physical state; (2) the individual does not have a legal guardian or legal

representative; and (3) DRNY has received a complaint about the individual's treatment or DRNY has determined there is probable cause to believe said individual has been subject to abuse or neglect. 42 U.S.C. §§ 15043(a)(2)(I)(ii) and 10805(a)(4)(B); and

c. all records of an individual with a developmental disability or mental illness who has died. 42 U.S.C. §§ 15043(a)(2)(J)(ii)(II) and 10805(a)(4)(B).

14. DRNY is entitled to access draft or final documents, including handwritten notes, electronic files, photographs, or video or audio tape records. 42 C.F.R. § 51.41(c); 45 C.F.R. § 1386.22(c).

15. DRNY's access authority includes reports and records prepared by an agency charged with investigating incidents of abuse, neglect, injury, or death of an individual with a developmental disability or a mental illness. 42 U.S.C. §§ 10806(b)(3) and 15043(c)(2).

16. DRNY's access authority includes access to documents regarding the steps taken to investigate the incidents; reports and records, including personnel records; supporting information that was relied upon in creating a report, including all information and records used and reviewed in preparing reports; records that describe persons who were interviewed; physical and documentary evidence that was reviewed; and related investigative findings. 42 C.F.R. § 51.41; 45 C.F.R. § 1386.22.

17. Under the DD Act, DRNY must be granted access to these records within three business days of making a request, or, in the case of records pertaining to a deceased individual, within 24 hours of the request. 42 U.S.C. § 15043(a)(2)(J)(i)-(ii). The PAIMI Act's implementing regulations require that access to these records be provided promptly. 42 C.F.R. § 51.41(a).

18. If DRNY's access to records is delayed or denied, DRNY must be provided with a written statement of reasons for the delay or denial. 42 C.F.R. § 51.43; 45 C.F.R. § 1386.22(i).

### B. The Justice Center

19. The Justice Center is an agency within the New York State Executive Department. N.Y. Exec. Law § 551.

20. The Justice Center is charged with investigating reported incidents of abuse, neglect, or injury of persons with disabilities. N.Y. Soc. Serv. Law § 492(3)(c).

### C. The Justice Center's Failure to Provide Access to Records

21. From 2013 to the present, DRNY has made multiple requests for access to Justice Center records pursuant to its federal P&A authority.

22. The Justice Center has repeatedly failed to timely reply with these requests.

23. Additionally, when the Justice Center has produced records in response to DRNY's requests, the records have been heavily and unlawfully redacted.

24. The Justice Center claims it may redact and has redacted:

   a. the identity of individuals reporting or making complaints of abuse or neglect to the Justice Center;

   b. mental health provider/clinical records or information;

   c. individual service recipient information;

   d. the identity of the staff member who is subject of an abuse or neglect allegation,

   e. the identity of individuals cooperating in investigations.

25. Additionally, the Justice Center asserts that state law limits DRNY's access to records notwithstanding the Federal P&A statutes and regulations upon which DRNY bases its access authority.

### 1. F.S.'s Records

26. In October 2014, DRNY learned that F.S., an individual with mental illness, had died in a facility operated by the New York State Department of Corrections and Community Supervision ("DOCCS") in November 2012.

27. The cause of F.S.'s death was suicide.

28. DRNY learned that the Justice Center and the Commission on Quality of Care and Advocacy for Persons with Disabilities ("CQC"), the predecessor agency of the Justice Center, had completed an investigation into F.S.'s death.

29. This investigation found that F.S. received inadequate mental health treatment during his incarceration.

30. F.S. had a mental illness and is a person with DRNY's jurisdiction under the PAIMI Act.

31. Based on information in a redacted version of the Justice Center/CQC investigatory report, DRNY determined that it had probable cause to believe that F.S. was abused and neglected while incarcerated in the custody of DOCCS and while receiving treatment from the New York State Office of Mental Health ("OMH").

32. On or around October 16, 2014, DRNY sent a letter to the Justice Center requesting a complete, unredacted copy of the investigatory records relating to F.S.

33. DRNY's request for access to records specifically cited its federal law authority to access records.

34. DRNY sent additional requests for these records on or around October 22 and October 31, 2014.

35. As of the date of the commencement of this action, DRNY has not received the requested records or any explanation for the Justice Center's failure to provide the requested records.

### 2. *L.B.'s Records*

36. In October 2013, DRNY received a complaint of abuse of L.B., an individual residing in a facility operated by OMH.

37. It was alleged that staff members physically abused L.B. while restraining him.

38. L.B. has a mental illness and is a person subject to DRNY's jurisdiction under the PAIMI Act.

39. On or around November 8, 2013, DRNY sent the Justice Center a request for records regarding the alleged abuse of L.B.

40. DRNY did not receive a response to this request.

41. On or around December 13, 2013, DRNY contacted the Justice Center again to request the status of its records request.

42. DRNY did not receive a response to this request.

43. On or around March 21, 2014, DRNY contacted the Justice Center by email and requested that the records be provided by March 28, 2014.

44. On March 25, 2014, the Justice Center responded, stating that the Justice Center had not responded to DRNY's multiple requests because the Justice Center had not yet completed its investigation into the alleged abuse of L.B.

45. On or around June 2, 2014, DRNY sent a letter to Defendant Wise stating that the Justice Center had failed to comply with numerous records requests, including the request regarding the physical abuse of L.B.

46. DRNY's letter specifically cited the federal statutes and regulations granting DRNY access authority, and requested access to the requested records by June 13, 2014.

47. On or around June 20, 2014, DRNY provided the Justice Center with a release signed by L.B. authorizing release of the requested records.

48. On or around August 6, 2014, DRNY contacted the Justice Center regarding its outstanding records request.

49. On or around August 6, 2014, the Justice Center responded that it had received DRNY's June 20 message and was working on a response.

50. On or around September 30, 2014, DRNY contacted Defendant Wise by email regarding the Justice Center's failure to properly respond to DRNY's records requests.

51. The email requested immediate access to the requested investigative reports based on DRNY's federally-mandated access authority.

52. DRNY received the Justice Center's response to its request for L.B.'s records on October 2, 2014, more than 10 months from the date of the first request, and more than three months from the date DRNY provided the Justice Center with a signed authorization from L.B.

53. The records provided to DRNY were heavily and unlawfully redacted.

### 3. A.T.'s Records

54. In October 2013, DRNY received a complaint of abuse and neglect of A.T., a minor residing in a facility licensed by the Office of Child and Family Services and approved by the New York State Education Department.

55. It was alleged that A.T. was a victim of abuse and/or neglect, resulting in injuries to his left eye and forehead.

56. A.T. has a developmental disability and is a person subject to DRNY's jurisdiction under the DD Act.

57. On or around April 28, 2014, DRNY requested all documents related to the Justice Center's investigation of the alleged abuse and neglect of A.T.

58. On May 15, 2014, DRNY received a phone call from Jan Perlin, Associate Counsel at the Justice Center, requesting a signed consent form from A.T.'s guardian authorizing release of the requested records.

59. The requested release was provided to the Justice Center on or around June 9, 2014.

60. On June 19, 2014, the Justice Center provided heavily and unlawfully redacted documents as its response to DRNY's request for records.

### 4. R.T.'s Records

61. In March 2014, DRNY received a complaint of abuse and neglect of R.T., an individual residing in a facility licensed by the New York State Office for People with Developmental Disabilities ("OPWDD").

62. It was alleged that R.T. suffered injuries leading to bruising and swelling of his eyes and hands due to abuse and neglect by facility staff.

63. R.T. is a person with an intellectual or developmental disability who is within DRNY's jurisdiction under the DD Act.

64. On or around March 20, 2014, DRNY contacted the Justice Center and requested information regarding the steps the Justice Center took to investigate the alleged abuse and neglect of R.T.

65. On April 18, 2014, the Justice Center informed DRNY that it had not completed its investigation.

66. DRNY contacted the Justice Center by phone on April 23, April 25, May 1, and May 12, requesting an update on the status of the Justice Center's investigation.

67. DRNY did not receive a response to these requests.

68. On or around May 15, 2014, DRNY sent a letter to the Justice Center requesting a prompt update on the status of the investigation.

69. DRNY did not receive a response to this letter.

70. On or around June 2, 2014, DRNY sent a letter to Defendant Wise stating that the Justice Center had failed to comply with numerous records requests, including the request regarding R.T.

71. DRNY's letter specifically stated that DRNY is entitled to access these records pursuant to federal law, cited the relevant federal statutes and regulations, and requested access to these records by June 13, 2014.

72. DRNY did not receive the requested records regarding R.T. by that time.

73. On or around July 25, 2014, DRNY sent a letter to Ms. Perlin, requesting the investigative file for R.T.

74. The July 25 letter included a release form signed by R.T.'s guardian authorizing the release of this information.

75. On October 9, 2014, more than six months after DRNY's initial records request, and over two months after DRNY provided a signed release, DRNY received documents from the Justice Center in response to its request.

76. The documents provided by the Justice Center were heavily and unlawfully redacted.

### D. DRNY's Efforts to Resolve the Dispute

77. On or around September 30, 2014, DRNY contacted Defendant Wise and requested a meeting.

78. The meeting occurred on November 4, 2014.

79. Defendants Wise and Forshaw were present at the meeting.

80. At the meeting, DRNY staff explained that DRNY has a right to timely access to unredacted records pursuant to Federal law.

81. Defendant Forshaw asserted that the Justice Center had the right to redact the records it produced in response to DRNY's requests.

82. Following this meeting, Defendant Forshaw sent DRNY a letter, dated November 24, 2014.

83. The November 24 letter asserts that the Justice Center is not required to provide an investigative report to DRNY until the Justice Center has determined that the investigative report has been finalized.

84. The November 24, 2014 letter also asserts that the Justice Center may redact the following information from records it provides to DRNY:

    a. the identity of individuals reporting or making complaints of abuse or neglect to the Justice Center ;

11

    b. mental health provider/clinical record or information;

    c. individual service recipient information;

    d. the identity of the staff member who is subject of an abuse or neglect allegation; and

    e. the identities of individuals cooperating in the investigation.

85. The Forshaw letter claims that N.Y. Executive Law § 558(b)(iii), N.Y. Public Officers Law § 96, and N.Y. Social Services Law § 496 authorize redaction of the records produced notwithstanding the requirements of Federal law.

86. On December 9, 2014, DRNY wrote a letter to Defendant Forshaw that asked the Justice Center to reconsider its position and attempted to persuade the Justice Center that its position was inconsistent with both state and federal law.

87. The Justice Center has not responded to the December 9, 2014 letter.

## V. PLAINTIFF'S CLAIMS

### Plaintiff's First Claim

### Violation of the Protection and Advocacy for Individuals with Mental Illness Act, Its Implementing Regulations, and 42 U.S.C. § 1983

88. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

89. DRNY is authorized to access the records of F.S. pursuant to 42 U.S.C. § 10805(a)(4)(B) and 42 C.F.R. § 51.41(b)(2).

90. The Justice Center's investigative reports regarding F.S. are reports prepared by an agency charged with investigating incidents of abuse and neglect under 42 U.S.C. § 10806(b)(3)(A), and are therefore covered by DRNY's access authority.

91. Defendants' refusal to promptly provide complete, unredacted records to DRNY violates the PAIMI Act and its implementing regulations, 42 U.S.C. § 10805(a)(4)(B); 42 C.F.R. § 51.41(b)(2).

92. Defendants' violation of the PAIMI Act and its implementing regulations frustrates and interferes with DRNY's federal law mandate to protect people with disabilities in New York State, investigate allegations of abuse and neglect, provide legal advocacy for people with disabilities, determine whether investigations conducted by state agencies charged with investigating allegations of abuse and neglect were fully and independently conducted, determine whether a further investigation by DRNY should be conducted, and determine whether further corrective action should occur.

93. Defendants, acting under color of state law, have deprived and continue to deprive DRNY of its federal law right to access records.

94. Defendants have maintained and continue to maintain a policy of failing to provide timely responses to DRNY's requests to access records pursuant to DRNY's authority as the designated P&A system.

95. Plaintiff is entitled to relief under 42 U.S.C. § 10805(a)(4)(B), 42 C.F.R. § 51.41(b)(2), and 42 U.S.C. § 1983.

**Plaintiff's Second Claim**

**Violation of the Protection and Advocacy for Individuals with Mental Illness Act, Its Implementing Regulations, and 42 U.S.C. § 1983**

96. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

97. DRNY is authorized to access the records of L.B. pursuant to 42 U.S.C. § 10805(a)(4)(A) and 42 C.F.R. § 51.41(b)(1).

98. The Justice Center's investigative reports regarding L.B. are reports prepared by an agency charged with investigating incidents of abuse and neglect under 42 U.S.C. § 10806(b)(3)(A), and are therefore covered by DRNY's access authority.

99. Defendants' refusal to promptly provide complete, unredacted records to DRNY violates the PAIMI Act and its implementing regulations, 42 U.S.C. § 10805(a)(4)(A); 42 C.F.R. § 51.41(b)(1).

100. Defendants' violation of the PAIMI Act and its implementing regulations frustrates and interferes with DRNY's federal law mandate to protect people with disabilities in New York State, investigate allegations of abuse and neglect, provide legal advocacy for people with disabilities, determine whether investigations conducted by state agencies charged with investigating allegations of abuse and neglect were fully and independently conducted, determine whether a further investigation by DRNY should be conducted, and determine whether further corrective action should occur.

101. Defendants, acting under color of state law, have deprived and continue to deprive DRNY of its federal law right to access records.

102. Defendants have maintained and continue to maintain a policy of failing to provide timely responses to DRNY's requests to access records pursuant to DRNY's authority as the designated P&A system.

103. Plaintiff is entitled to relief under 42 U.S.C. § 10805(a)(4)(A), 42 C.F.R. § 51.41(b)(1), and 42 U.S.C. § 1983.

**Plaintiff's Third Claim**

**Violation of the Developmental Disabilities and Bill of Rights Act, its Implementing Regulations, and 42 U.S.C. § 1983**

104. Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

105. DRNY is authorized to access the records of A.T. and R.T. pursuant to 42 U.S.C. § 15043(a)(2)(I)(i) and 45 C.F.R. § 1386.22(a)(1).

106. The Justice Center's investigative reports regarding A.T. and R.T. are reports prepared by an agency charged with investigating incidents of abuse and neglect under 42 U.S.C. § 10543(c), and are therefore covered by DRNY's access authority.

107. Defendants' refusal to permit DRNY to timely access unredacted records violates the DD Act and its implementing regulations, 42 U.S.C. § 15043(a)(2)(I)(i); 45 C.F.R. § 1386.22(a)(1).

108. Defendants' violations of the DD Act and its implementing regulations frustrate and interfere with DRNY's federal law mandate to protect people with disabilities in New York State, investigate allegations of abuse and neglect, provide legal advocacy for people with disabilities, determine whether investigations conducted by state agencies charged with

investigating allegations of abuse and neglect were fully and independently conducted, determine whether a further investigation by DRNY should be conducted, and determine whether further corrective action should occur.

109. Defendants, acting under color of state law, have deprived and continue to deprive DRNY of its federal law right to access records.

110. Defendants have maintained and continue to maintain a policy of failing to provide timely and full responses to DRNY's requests to access records pursuant federal law.

111. Plaintiff is entitled to relief under 42 U.S.C. § 15043(a)(2)(I)(i), 45 C.F.R. § 1386.22(a)(1), and 42 U.S.C. § 1983.

### Plaintiff's Fourth Claim

### Federal Law Preemption

112. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

113. The DD and PAIMI Acts authorize DRNY to access records, including reports and records prepared by an agency charged with investigating incidents of abuse, neglect, injury, or death of an individual with a developmental disability or a mental illness. 42 U.S.C. §§ 10806(b)(3) and 15043(c)(2).

114. The DD and PAIMI Acts and their implementing regulations expressly preempt state law. 42 U.S.C. § 10806(b)(2)(C); 42 C.F.R. § 51.31(i); 45 C.F.R. § 1386.21(f).

115. Defendants assert that N.Y. Executive Law § 558, N.Y. Public Officers Law § 96, and N.Y. Social Services Law § 496 allow the redaction of records produced to DRNY notwithstanding the DD and PAIMI Acts and their implementing regulations.

116. As interpreted and applied by Defendants, N.Y. Executive Law § 558, N.Y. Public Officers Law § 96, and N.Y. Social Services Law § 496 are preempted by federal law, including 42 U.S.C. §§ 10805(a)(4), 10806(b)(2)(C), 10806(b)(3)(A), 15043(a)(2)(I) and 15043(c); 42 C.F.R. §§ 51.31(i), 51.41(b) and 51.41(c)(2); and 45 C.F.R. §§ 1386.21(f), 1386.22(a) and 1386.22(b)(2).

117. Defendants' violations of the DD Act, the PAIMI Act, and their implementing regulations frustrate and interfere with DRNY's federal law mandate to protect people with disabilities in New York State, investigate allegations of abuse and neglect, provide legal advocacy for people with disabilities, determine whether investigations conducted by state agencies charged with investigating allegations of abuse and neglect were fully and independently conducted, determine whether a further investigation by DRNY should be conducted, and determine whether further corrective action should occur.

118. Defendants, acting under color of state law, have deprived and continue to deprive DRNY of its federal law right to access records.

119. Defendants have maintained and continue to maintain a policy of failing to provide timely responses to DRNY's requests to access records pursuant to DRNY's authority as the designated P&A system.

120. Plaintiff is entitled to relief under 42 U.S.C. § 1983 and the Supremacy Clause of the U.S. Constitution.

WHEREFORE, Plaintiff respectfully requests the following relief:

(1) a declaratory judgment that Defendants have violated Plaintiff's rights under the DD Act, the PAIMI Act, and 42 U.S.C. § 1983;

(2) a declaratory judgment that N.Y. Executive Law § 558, N.Y. Public Officers Law § 96, and N.Y. Social Services Law § 496 are, as interpreted and applied by Defendants, preempted by federal law;

(3) an injunction ordering Defendants to provide Plaintiff with complete, unredacted copies of all records requested pursuant to its federally mandated P&A authority;

(4) an injunction ordering Defendants to provide timely and complete responses to all future records requests made by Plaintiff pursuant to its federally mandated P&A authority;

(5) an injunction ordering Defendants to immediately provide the unredacted records requested regarding F.S, L.B., A.T., and R.T.

(6) an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988;

(7) any other relief that the Court deems appropriate.

Dated:  January 9, 2015

Albany, New York


Respectfully submitted,


 **/s/ Andrew Stecker**
Andrew Stecker, Esq.  Bar Roll # 518899
Cliff Zucker, Esq.  Bar Roll # 102871
DISABILITY RIGHTS NEW YORK
725 Broadway, Suite 450
Albany, New York, 12207
518-432-7861
518-427-6561 (fax) (not for service)
Andrew.Stecker@DisabilityRightsNY.org