**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DISABILITY RIGHTS NEW YORK,**

                    **Plaintiff,**                    **1:15-cv-32**
                                                      **(GLS/CFH)**

          **v.**

**JEFF WISE,** in his official capacity
as Executive Director of the New
York State Justice Center for the
Protection of People with Special
Needs, **et al.,**

                    **Defendants.**
_____

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Disability Rights New York          ANDREW A. STECKER, ESQ.
725 Broadway, Suite 450             CLIFF ZUCKER, ESQ.
Albany, NY 12207                    MICHAEL W. GADOMSKI, ESQ.

**FOR THE DEFENDANTS:**
HON. ERIC T. SCHNEIDERMAN           HELENA LYNCH
New York State Attorney General     Assistant Attorney General
The Capitol
Albany, NY 12224

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Disability Rights New York (DRNY) commenced this action against defendants Jeff Wise, in his official capacity as Executive Director of the New York State Justice Center for the Protection of People with Special Needs (hereinafter "the Justice Center"), and Robin A. Forshaw, in her official capacity as General Counsel of the Justice Center, pursuant to 42 U.S.C. § 1983, the Protection and Advocacy for Individuals with Mental Illness (PAIMI) Act,[1] and the Developmental Disabilities Assistance and Bill of Rights Act of 2000[2] (hereinafter "the DD Act"). (*See generally* Compl., Dkt. No. 1.) Pending is defendants' motion to dismiss the complaint for failure to state a claim. (Dkt. No. 10.)[3] For the reasons that follow, defendants' motion is denied.

## II. **Background**[4]

---

[1] *See* 42 U.S.C. § 10801-10851.

[2] *See* 42 U.S.C. § 15001-15115.

[3] In its response to defendants' motion to dismiss, DRNY requests that the court enter summary judgment in its favor, because there is no genuine dispute as to any material fact in this case. (Dkt. No. 16 at 7 n.2.) However, DRNY has not filed a motion for summary judgment. Moreover, defendants have yet to file an answer in this case and, thus, have yet to admit or deny the facts alleged in the complaint. Accordingly, the court will not consider summary judgment on its own. *See* Fed. R. Civ. Pro. 56(f)(3) ("After giving notice and a reasonable time to respond, the court may . . . consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.").

[4] The facts are drawn from DRNY's complaint and presented in the light most favorable to it.

In order to ensure that the rights of individuals with mental illness or developmental disabilities are protected, the PAIMI and DD Acts condition certain federal funding for states on the establishment of protection and advocacy (hereinafter "P&A") systems.  *See* 42 U.S.C. §§ 10801(b)(1),10803, 15001(b)(2), 15043(a)(2)(A); *Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 152-53 (2d Cir. 2012); *Conn. Office of Prot. & Advocacy for Pers. with Disabilities v. Hartford Bd. of Educ.*, 355 F. Supp. 2d 649, 654 (D. Conn. 2005), *aff'd*, 464 F.3d 229 (2d Cir. 2006).  DRNY, an independent nonprofit organization, is New York's designated P&A agency.  (Compl. ¶¶ 1, 7-9.) The Justice Center, an agency within the New York State Executive Department, is charged with investigating reported incidents of abuse, neglect, or injury of persons with disabilities.  (*Id.* ¶¶ 19-20.)  Under the PAIMI and DD Acts, DRNY has the authority to review the records of individuals with mental illness or developmental disabilities under certain circumstances,[5] including reports prepared by agencies charged with

---

[5] As relevant here, DRNY has the authority to access all records of an individual with developmental disabilities or mental illness who: (1) authorizes DRNY to access their records; or (2) by reason of their mental or physical condition is unable to authorize the release of records, does not have a guardian or representative, or the representative refuses to act after being offered assistance from DRNY, and DRNY has received a complaint regarding the individual's treatment or has probable cause to believe the individual has been subjected to

investigating alleged incidents of abuse, neglect, and injury of such individuals.  (*Id.* ¶¶ 12-13, 15); *see* 42 U.S.C. §§ 10806(b)(3)(A), 15043(c)(2).  When DRNY makes a request for access to such records, such records must be provided promptly.  (Compl. ¶ 17); *see* 42 U.S.C. § 15043(a)(2)(J)(i) (requiring that requested records be provided not later than three business days after the P&A system makes a written request); 42 C.F.R. § 51.41(a) ("Access to records shall be extended promptly to all authorized agents of a P&A system.").  If access to such records is delayed or denied, DRNY must be promptly provided with a written statement of reasons for the denial.  (Compl. ¶ 18); *see* 42 C.F.R. § 51.43; 45 C.F.R. § 1386.26.

In November 2012, F.S., an individual who suffered from a mental illness, committed suicide in a facility operated by the New York State Department of Corrections and Community Supervision (DOCCS).  (Compl. ¶¶ 26-27.)  In October 2014, DRNY reviewed a redacted version of an investigatory report completed by a predecessor agency of the Justice Center, which concluded that F.S. received inadequate mental health treatment during his incarceration.  (*Id.* ¶¶ 26, 28-29, 31.)  The information

mistreatment.  (Compl. ¶ 13); *see* 42 U.S.C. §§ 10805(a)(4)(A)-(B),15043(a)(2)(I)(i)-(iii).

contained in the redacted report caused DRNY to determine it had

probable cause to believe that F.S. was abused and neglected while in the

custody of DOCCS.  (*Id.* ¶ 31.)  Based on that belief, DRNY requested that

the Justice Center provide it with "a complete, unredacted copy of the

investigatory records relating to F.S."  (*Id.* ¶ 32.)  DRNY again requested

F.S.' records on two subsequent occasions, but never received a response

from the Justice Center.  (*Id.* ¶¶ 34-35.)

   In October 2013, DRNY received a complaint of abuse of L.B., who

suffers from a mental illness and resided at a facility operated by the New

York State Office of Mental Health.  (*Id.* ¶¶ 36, 38.)  On three separate

occasions beginning in November 2013, DRNY requested that the Justice

Center provide it with records regarding the alleged abuse of L.B.  (*Id.*

¶¶ 39, 41, 43.)  In March 2014, the Justice Center responded to DRNY,

explaining that it had not yet completed its investigation into the alleged

abuse of L.B.  (*Id.* ¶ 44.)  After contacting the Justice Center on three more

occasions, and providing a signed release from L.B. authorizing the

release of the requested records, in October 2014, DRNY received the

Justice Center's report, which had been "heavily" redacted.  (*Id.* ¶¶ 45, 47-

48, 50, 52-53.)

In October 2013, DRNY also received a complaint of abuse and neglect of A.T., a minor with a developmental disability who resided in a facility licensed by the Office of Child and Family Services and approved by the New York State Education Department. (*Id.* ¶¶ 54, 56.) DRNY requested "all documents related to the Justice Center's investigation of the alleged abuse and neglect of A.T." in April 2014. (*Id.* ¶ 57.) After providing a signed consent form from A.T.'s guardian authorizing the release of the requested records, the Justice Center provided DRNY "heavily" redacted documents. (*Id.* ¶¶ 58-60.)

In March 2014, DRNY received a complaint of abuse and neglect of R.T., a person with a developmental disability who resided in a facility licensed by the New York State Office for People with Developmental Disabilities. (*Id.* ¶¶ 61-63.) On March 20, 2014, DRNY requested "information regarding the steps the Justice Center took to investigate the alleged abuse and neglect," and the Justice Center responded, on April 18, 2014, that it had not yet completed its investigation. (*Id.* ¶¶ 64-65.) Thereafter, DRNY contacted the Justice Center numerous times in April, May, and June 2014, by phone and mail, requesting an update on the status of the investigation and providing a release signed by R.T.'s

guardian, authorizing release of the investigative file.  (*Id.* ¶¶ 66, 68, 70, 73-74.)  DRNY received no response to these requests until October 9, 2014, at which time the Justice Center provided "heavily" redacted documents.  (*Id.* ¶¶ 67, 69, 72, 75-76.)

DRNY alleges that it made efforts to resolve the dispute regarding its right to timely access of unredacted records from the Justice Center, but the Justice Center maintained that it is not required to provide an investigative report to DRNY until the Justice Center has determined that the report is final, and further, it may redact from the records it provides DRNY information that identifies individuals reporting abuse or neglect to the Justice Center, staff members who are subject to abuse or neglect allegations, and individuals cooperating in investigations, as well as mental health provider records or information and individual service recipient information.  (*Id.* ¶¶ 77-84, 86.)  The Justice Center based its position on New York Executive Law § 558(b)(iii), New York Public Officers Law § 96, and New York Social Services Law § 496.  (*Id.* ¶ 85.)  Because it could not resolve the dispute, on January 9, 2015, DRNY commenced this action seeking a declaratory judgment that defendants have violated DRNY's rights under the PAIMI and DD Acts and New York Executive Law § 558,

New York Public Officers Law § 96, and New York Social Services Law § 496, as interpreted and applied by defendants, are preempted by federal law. (*Id.* at 17-18.) DRNY further seeks an injunction ordering defendants to provide DRNY with complete, unredacted copies of all records requested pursuant to its P&A authority, including those regarding F.S., L.B., A.T., and R.T., as well as ordering defendants to provide timely and complete responses to all future records requests made pursuant to DRNY's P&A authority, and an award of attorney's fees and costs. (*Id.* at 18.) Shortly after this action was filed, defendants filed the pending pre-answer motion to dismiss, (Dkt. No. 10), which the court now considers.

### III. Standard of Review

The standard of review applicable to Fed. R. Civ. P. 12(b)(6) motions is well settled and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

### IV. Discussion

### A. Access to Records Under the PAIMI and DD Acts

Defendants argue that DRNY's complaint should be dismissed because the PAIMI and DD Acts do not authorize the Justice Center to disclose anything other than what was included in its responses to DRNY. (Dkt. No. 10, Attach. 1 at 13-21.) Specifically, defendants contend that the PAIMI and DD Acts do not require disclosure of the information redacted by the Justice Center, and authorize the disclosure of only finalized reports. (*Id.* at 14-19.) Further, they assert that the Justice Center has not interfered with DRNY's federal mandates. (*Id.* at 19-20.) DRNY counters, and the court agrees, that it is authorized to review complete, unredacted records from the Justice Center, which must be provided in accordance with the required time lines. (Dkt. No. 16 at 8-19.)

DRNY seeks the records of F.S. and L.B. under the PAIMI Act, and the records of A.T. and R.T. under the DD Act. (Compl. ¶¶ 88-111.) As, defendants point out, the relevant provisions of the respective statutes are substantially identical. (Dkt. No. 10, Attach. 1 at 13 n.6.) In particular, under the PAIMI Act, DRNY is entitled to access "all records" of individuals whose records are subject to disclosure,[6] and the term "records" includes

---

[6] The parties appear to agree that the four individuals whose records DRNY seek, F.S., L.B., A.T. and R.T., are each within a category of individuals whose records are subject to disclosure. (Dkt. No. 10, Attach. 1 at 4-5 n.3.)

9

"reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at [a] facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents."  42 U.S.C. §§ 10805(a)(4); 10806(b)(3)(A).  Similarly, under the DD Act, DRNY has access to "all records" of individuals whose records are subject to disclosure, including "a report prepared by an agency or staff person charged with investigating reports of incidents of abuse or neglect, injury, or death occurring at [any location at which services, supports, or other assistance is provided to individuals with developmental disabilities], that describes such incidents and the steps taken to investigate such incidents."  *Id.* § 15043(a)(2)(I), (c)(2).

Defendants argue that neither statute authorizes the Justice Center to identify individuals, including witnesses, subjects, and sources, or to provide underlying treatment records or individual service recipient information.  (Dkt. No. 10, Attach. 1 at 14.)  To that end, defendants claim that the words "describe" and "report" qualify the disclosures the Justice Center must make under the PAIMI and DD Acts.  (*Id.* at 14-16.)  They argue that DRNY has no right to access the Justice Center's "records," but

only its "reports."  (*Id.* at 15.)  Further, they contend that only the portion of the Justice Center's reports that "describe" alleged incidents of abuse or neglect, the steps taken to investigate the incidents, and the information and records used and reviewed in preparing the reports are required to be disclosed by the Justice Center.  (*Id.*)  According to defendants, only the facilities that render care and treatment to individuals whose records are subject to disclosure may actually identify individuals or release the facilities' own records.  (*Id.* at 14)  Based on this interpretation of the statutes, the Justice Center redacted such information from the reports it provided to DRNY.  (*Id.*)  After analyzing the PAIMI and DD Acts, however, the court disagrees that the statutory language at issue limits access to records in the manner defendants suggest.

As the Second Circuit has explained, statutory interpretation must "begin with the plain language, giving all undefined terms their ordinary meaning while attempt[ing] to ascertain how a reasonable reader would understand the statutory text, considered as a whole."  *Deutsche Bank Nat'l Trust Co. v. Quicken Loans Inc.*, 810 F.3d 861, 868 (2d Cir. 2015) (internal quotation marks and citation omitted); *see Prot. & Advocacy For Pers. With Disabilities*, *Conn. v. Mental Health & Addiction Servs.*, 448

F.3d 119, 124 (2d. Cir. 2006). If a statutory provision is ambiguous, the court must "then turn to canons of statutory construction for assistance in interpreting the statute." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 111 (2d Cir. 2015) (citing *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005)). "These include looking to the purpose of [a statute], and affording some degree of weight to the interpretations of the agencies charged with enforcing it." *Id.* at 113.

Merriam Webster's Collegiate Dictionary defines "describe" as "to represent or give an account of in words." *Describe*, Merriam Webster's Collegiate Dictionary (10th ed. 1997). Under this definition, the court sees no basis for interpreting the PAIMI and DD Acts as permitting the Justice Center to redact from its disclosure to DRNY the identities of individuals, including witnesses, subjects, and sources involved in allegations of abuse, or mental health provider and individual service recipient information. The court agrees with DRNY that a reasonable reader would understand the statutory text, considered as a whole, to require the disclosure of the entirety of reports that contain "an account of" alleged incidents of abuse or neglect. (Dkt. No. 16 at 9-10); *see Conn. Office of Prot. & Advocacy for Pers. With Disabilities v. Kirk,* 354 F. Supp. 2d 196, 201-02 (D. Conn.

2005) (concluding that the phrase "that describe incidents of abuse, neglect, and injury" in the PAIMI Act "simply distinguishes between reports pertaining to the incident in question and reports that do not pertain to the incident"), *aff'd sub nom. Prot. & Advocacy For Pers. With Disabilities, Conn.,* 448 F.3d 119.[7]  The statutes make clear that P&A systems such as DRNY are entitled to all records of subject individuals, and give no indication that investigative agencies should redact or withhold portions of their reports.  Even if the court were to accept defendants' contention that only the portions of the Justice Center's reports that describe an alleged incident of abuse or neglect must be disclosed, defendants fail to explain why a description of such an alleged incident should not include the identity of any individuals involved in, or witness to, the incident.  (Dkt. No. 10, Attach. 1 at 14.)

Turning to the disclosure of facility records, while it is clear from the plain language of the statute that DRNY is entitled to receive such records, it is arguably less clear whether an investigatory agency, such as the

---

[7] Defendants argue that *Kirk* is inapplicable here, because that case involved the disclosure of peer review reports by facilities that render care and treatment to individuals with mental illness.  (Dkt. No. 17 at 3-4.)  However, the decision in *Kirk* included an analysis of the exact statutory language at issue here, and the reasoning applied is equally persuasive where the disclosure is made by an agency investigating allegations of abuse.  *See* 354 F. Supp. 2d at 199-200, 201-02.

Justice Center, can be required to produce them when the facility records are not contained in the agency's report itself.  Defendants assert that, where the plain language of the statutes is ambiguous, the Justice Center's interpretation of the statutes is entitled to deference.  (Dkt. No. 10, Attach. 1 at 2, 12.)  This argument is fundamentally flawed.  Defendants rely on the rationale of *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  Under, *Chevron*, an agency's interpretation of a statute it is responsible for administering is entitled to deference so long as it is reasonable in light of the two-step analysis set forth by the Supreme Court. *See* 467 U.S. at 842-44.  As DRNY points out, "[t]he Justice Center is not a federal agency, nor is it charged with enforcing the P&A Acts."  (Dkt. No. 16 at 7.)  Thus, the court agrees with DRNY that *Chevron* is irrelevant. *See MCI Telecomms. Corp. v. N.Y. Tel. Co.*, 134 F. Supp. 2d 490, 501 (N.D.N.Y. 2001) ("The deference accorded federal agencies under *Chevron* is based upon the federal agency's expertise and familiarity with the subject matter of its mandate and the need for coherent and uniform construction of a federal law nationwide. . . . Those considerations are not applicable to a state agency's interpretation of federal law." (internal quotation marks and citations omitted)).  Instead, the court must consider

whether the Justice Center's interpretation of the statutes is consistent with federal law, an issue that is subject to *de novo* review in federal court. *See Turner v. Perales*, 869 F.2d 140, 141 (2d Cir. 1989).

As noted above, when statutory language is ambiguous, the court can look to the purpose of the statute as well as the interpretations of the agencies charged with enforcing it. *See Greathouse*, 784 F.3d at 113. Congress enacted the PAIMI after finding that "individuals with mental illness are vulnerable to abuse and serious injury" as well as neglect, and "State systems for monitoring compliance with respect to the rights of individuals with mental illness . . . are frequently inadequate." 42 U.S.C. § 10801(a). Accordingly, the purposes of the PAIMI Act relevant to this litigation are "to assist States to establish and operate a [P&A] system for individuals with mental illness which will . . . protect and advocate the rights of such individuals to ensure the enforcement of the Constitution and Federal and State statutes; and . . . investigate incidents of abuse and neglect of individuals with mental illness." *Id.* § 10801(b). The DD Act was similarly enacted to "protect the legal and human rights of individuals with developmental disabilities," *id.* § 15041, after Congress found that such individuals "are at greater risk than the general population of abuse,

15

neglect, financial and sexual exploitation, and the violation of their legal and human rights," *id.* § 15001(a)(5).

To accomplish these purposes, the PAIMI and DD Acts entitle P&A systems, such as DRNY, with statutory authority to "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness" or developmental disabilities. *Id.* §§ 10805(a)(1)(B); 15043(a)(2)(A)(i). Further, to carry out the statutory objectives, the PAIMI and DD Acts authorize P&A systems broad access to individuals, facilities, and records. *See id.* §§ 10805(a)(3)-(4); 15043(a)(2)(H)-(J); *see also Ctr. For Legal Advocacy v. Hammons*, 323 F.3d 1262, 1270 (10th Cir. 2003) ("[T]he statutory phrase 'all records of . . . any individual' is quite broad."); *Ala. Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 97 F.3d 492, 497 (11th Cir. 1996) (describing the scope of access granted to a P&A system as broad).[8] Clearly, the purpose of the statutes weighs in favor of robust disclosure. Nevertheless, defendants defend their position, in part, on the ground that the information

---

[8] The discussion in *Tarwater* pertains to the 1975 Developmental Disabled Assistance and Bill of Rights Act, Pub. L. No. 94-103, 89 Stat. 486 (1975), which was repealed and replaced with the DD Act in 2000. *See* 97 F.3d at 497; The DD Act, Pub. L. No. 106-402, § 401, 114 Stat. 1677 (2000).

at issue is sensitive and confidential.  (Dkt. No. 10, Attach. 1 at 2.)  Both the PAIMI and DD Acts, however, impose a duty of confidentiality on P&A systems.  *See* 42 U.S.C. § 10806(a); 45 C.F.R. § 1386.28.  Thus, the court agrees with DRNY that the Justice Center cannot withhold records based on their confidential nature.  (Dkt. No. 16 at 16); *see, e.g.*, *Disability Rights Wis., Inc. v. Wis. Dep't of Pub. Instruction*, 463 F.3d 719, 729-30 (7th Cir. 2006) ("The point of the federal P&A statutes is to establish and equip a specialized agency to look out for individuals with mental illness. Confounding the agency in the name of an illusory concern for privacy defeats that very important goal.").

A review of the implementing regulations of the PAIMI and DD Acts further clarifies a P&A system's right of access under the statutes.  Under the PAIMI Act's implementing regulations,

> [i]nformation and individual records, whether written or in another medium, draft or final, including handwritten notes, electronic files, photographs or video or audio tape records, which shall be available to the P&A system . . . shall include, but not be limited to . . . [r]eports prepared by an agency charged with investigating abuse[,] neglect, or injury occurring at a facility rendering care or treatment . . . that describe any or all of the following:
> (i) Abuse, neglect, or injury occurring at the facility;
> (ii) The steps taken to investigate the incidents;

> (iii) Reports and records, including personnel records, prepared[,] or maintained by the facility, in connection with such reports of incidents; or
> (iv) Supporting information that was relied upon in creating a report, including all information and records used or reviewed in preparing reports of abuse, neglect[,] or injury such as records which describe persons who were interviewed, physical and documentary evidence that was reviewed, and the related investigative findings.

42 C.F.R. § 51.41(c)(2).  The regulations implementing the DD Act contain almost identical language.  *See* 45 C.F.R. § 1386.25(b)(2).  The breadth of records which the regulations require disclosure of, as well as the fact that they contain an inclusive and not exhaustive list of records that must be disclosed, supports DRNY's contention that it is entitled to all relevant records in possession of the Justice Center.  (Dkt. No. 16 at 14-17.)  Although the regulations specify that P&A systems are entitled to merely an investigatory agency's reports describing underlying records, the United States Department of Health and Human Services (DHHS) has explained that 42 C.F.R. § 51.41(c)(2) provides P&A systems access to "supporting information relied upon in creating a record, including all information and records *used or reviewed* in preparing reports of abuse, neglect, [or] injury."  62 Fed. Reg. 53,548, 53,560 (Oct. 15, 1997) (emphasis added).

That DHHS interprets the PAIMI Act as authorizing P&A systems access to such underlying records further supports DRNY's claims.

Defendants somewhat confusingly argue that DRNY is not entitled to draft documents, handwritten notes, electronic files, photographs, or video or audio tape records from investigatory agencies such as the Justice Center, because the reports that such agencies must disclose are not "information" or "individual records."  (Dkt. No. 10, Attach. 1 at 17-19.) According to defendants, only facilities that render treatment are required to disclose "individual records" under the regulations.  (*Id.* at 18.)  Such an interpretation is contrary to the express language of the regulations, which includes the reports of investigatory agencies in the list of "individual records" which are subject to disclosure.  *See* 42 C.F.R. § 51.41(c)(2); 45 C.F.R. § 1386.25(b)(2).  Thus, the regulations, on their face, require the disclosure of draft reports from investigatory agencies.

Finally, defendants argue that DRNY's claim that the Justice Center has interfered with its federal mandates is baseless.  (Dkt. No. 10, Attach. 1 at 19-20.)  According to defendants, DRNY does not have a statutory mandate to determine whether investigations conducted by state agencies charged with investigating allegations of abuse and neglect were fully and

independently conducted.  (*Id.*)  The fact that such language is not

contained in the PAIMI or DD Acts is of no moment.  By redacting and

withholding portions of its reports, the Justice Center has interfered with

DRNY's mandate to protect and advocate on behalf of individuals with

mental illness and developmental disabilities, and particularly its mandate

to investigate incidents of abuse and neglect.  Defendants contend that the

Justice Center has not interfered with such mandates because DRNY can

access the information it seeks from facilities that provide treatment to

individuals with disabilities.  (*Id.* at 21.)  However, as DRNY points out, by

withholding portions of its report, including underlying facility records and

treatment information, the Justice Center potentially precludes DRNY from

accessing such information at all.  (Dkt. No. 16 at 21 ("Facility [r]ecords

held by the Justice Center may have been lost, destroyed, or altered by the

facility that created them.").)  Further, defendants' contention that access to

the entirety of information included in the reports of investigatory agencies

is not essential to a P&A system's statutory mandates is contrary to the

explicit language of the statutes granting P&A systems access to such

reports.  *See Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 623 (2d

Cir. 2015) ("[The court] must . . . strive to avoid interpretations of a statute

that would render any phrase or provision superfluous." (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001))); *see also Dunn v. Dunn*, No. 2:14cv601–MHT, 2016 WL 324990, at *12 (M.D. Ala. Jan. 27, 2016) ("Congress, by authorizing unfettered access to 'all records,'. . . manifested its view that access to such records is critical to the efficacy of efforts to protect and advocate for the mentally ill.").

## B.   Federal Preemption

Defendants also seek to dismiss DRNY's claims that New York's Executive Law, Public Officers Law, and Social Services Law, as interpreted and applied by defendants, are preempted by the PAIMI and DD Acts.  (Dkt. No. 10, Attach. 1 at 21-22); *see* N.Y. Exec. Law § 558; N.Y. Pub. Off. Law § 96; N.Y. Soc. Serv. Law § 496.  According to defendants, these laws are consistent with the PAIMI and DD Acts, as New York Social Services Law § 496 and New York Executive Law § 558 authorize the disclosure of the Justice Center's reports to DRNY.  (*Id.*)  Further, they assert that New York Public Officers Law § 96 permits disclosure of information where specifically authorized by state or federal statute.  (*Id.* at 22.)  Under defendants' interpretation of the PAIMI and DD Acts, this prevents the Justice Center from disclosing the identity of reports, subjects,

or witnesses, mental health provider records, or individual service recipient information. (*Id.*) The court has determined, however, that such disclosures are authorized by the PAIMI and DD Acts.

It is axiomatic that "state law is naturally preempted to the extent of any conflict with a federal statute, or where, under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Starr Int'l Co. v. Fed. Reserve Bank of N.Y.*, 906 F. Supp. 2d 202, 234-35 (S.D.N.Y. 2012) (internal quotation marks and citations omitted), *aff'd*, 742 F.3d 37 (2d Cir. 2014). While they are clearly not in conflict with the PAIMI or DD Acts on their face, accepting as true DRNY's allegation that the Justice Center informed it that these state statutes authorize the withholding of the Justice Center's complete records, (Compl. ¶ 85), the court denies defendants' motion to dismiss DRNY's claim that such laws, as interpreted and applied by defendants, are preempted by federal law. *See N.Y.S. Comm'n on Cable Television v. F.C.C.*, 669 F.2d 58, 62 (2d Cir. 1982) (explaining that, in determining whether a state law conflicts with a federal law, courts must "'consider the relationship between state and federal laws as they are interpreted and applied, not merely as

they are written'" (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 526 (1977))).

## V.  <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that defendants file an appropriate responsive pleading within the time allotted by the rules; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 18, 2016
Albany, New York

Gary L. Sharpe
U.S. District Judge